Filed 3/28/25  In re F.V. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re F.V., <br><br> a Person Coming Under the Juvenile Court Law. | B335484 <br><br> (Los Angeles County Super. Ct. No. 23CCJP03819) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> R.V., <br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Nicole Kronberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————

Upset about her boyfriend S.L. breaking up with her, R.V. (Mother) began drinking on the evening of November 2, 2023. Later, in the middle of the night and intoxicated, she decided to confront S.L. and roused her then-three-and-a-half-year-old son F.V. to accompany her in a cab ride over to S.L.'s house. The confrontation between Mother and S.L. quickly escalated into Mother repeatedly hitting him in the head. When S.L. said he was going to call the police, Mother left F.V. behind and fled. The Los Angeles County Sheriff's Department (LASD) later apprehended and arrested Mother. Following the arrest, F.V. was stranded at the sheriff's station until a social worker could transport the child to the home of his father, F.V.H. (Father).

Based on this incident, as well as Mother's later failures to acknowledge the danger in which she had placed F.V. and to engage with services to prevent further danger, the juvenile court asserted jurisdiction over F.V., removed him from Mother, and placed him with Father. The court then terminated jurisdiction with a custody order granting both parents joint legal custody, Father sole physical custody, and Mother monitored visits of at least six hours per week.

Mother appeals the juvenile court's jurisdiction, removal, and custody order. Father is not a party to this appeal. We find substantial evidence supports the court's assertion of jurisdiction and removal of F.V. from Mother, and no abuse of discretion in the court's custody determination. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Family History

Father and Mother's relationship began in 2016; Mother gave birth to F.V. in 2019. The parents separated in 2021 when Mother's relationship with S.L. began. Mother and Father denied any domestic violence between them and stated neither of them had substance abuse issues. Both parents stated that after separating they successfully co-parented F.V. without the need for a family law custody order.

### B. Domestic Violence Incidents

On August 28, 2023, Mother called the police to report a domestic violence incident. The station call log reflects that Mother told authorities S.L. came to her residence, hit her with his hands, and pulled her hair. F.V. was in Mother's home at the time.

According to an LASD incident report dated November 3, 2023, S.L. called law enforcement to state that around 2:00 a.m. that morning Mother hit him over the head. S.L. said he was asleep in his home when Mother began knocking on his front door. S.L. stepped outside, and Mother (who appeared intoxicated) began arguing with him about their recent breakup. Mother became angry and hit S.L. multiple times in the head with her hands, one of which held a phone. Deputies observed multiple abrasions to S.L.'s head. Mother fled before LASD deputies arrived. Deputies searched the neighborhood but could not locate her. Mother eventually returned to S.L.'s home on foot and was arrested.

After her arrest, Mother told deputies that she took a taxi to S.L.'s home to talk to him about their breakup, and admitted she hit him multiple times after getting angry. F.V. was present

3

at the scene and was taken to the sheriff's station, where a deputy contacted the Los Angeles County Department of Children and Family Services (DCFS) to take custody of the child. DCFS later transported F.V. to Father's home.

A DCFS social worker interviewed Mother on November 3, 2023. Mother said she went to S.L.'s home to speak with him about their breakup after he stopped answering her calls the prior evening. She claimed that she had drunk only two beers beforehand and denied any substance abuse history. Mother rode in a taxi to S.L.'s house and took F.V. along with her. Mother initially stated she left F.V. in the taxi when she went to speak with S.L.; she later stated F.V. was standing next to her during the altercation but not close enough to get hurt. Mother said S.L. pushed her, and she reacted by slapping his face three times. Mother said she left S.L.'s home briefly; she did not claim to have taken F.V. with her when she did. Mother was arrested when she returned. Mother asked DCFS to release F.V. to Father, who she said was involved on a day-to-day basis with raising the child.

The social worker also spoke on November 3 to F.V., who was upset and unable to provide a meaningful statement. When the social worker asked F.V. if he wanted to go with Father, F.V. responded in Spanish "yes" because "mom is drunk again." In an interview weeks later, F.V. did not respond to questions about Mother's alcohol consumption or where he waited for Mother when they went to S.L.'s home. He shook his head no when asked if he saw Mother involved in a fight and if any adult was abusive towards him on November 3.

4

## C.     DCFS Files a Petition and Further Investigates

On November 7, 2023, DCFS filed a petition pursuant to Welfare and Institutions Code[1] section 300. The petition alleged a single count under section 300, subdivision (b)(1) asserting Mother's conduct on November 3, 2023 endangered F.V.'s health and safety, and placed the child at substantial risk of serious physical harm.

At a hearing on November 22, 2023, the juvenile court detained F.V. from Mother and released the child to Father. The court provided Mother with monitored visits for at least six hours a week, with DCFS having the discretion to liberalize. The court ordered DCFS to provide Mother with referrals for services including drug and alcohol testing and to assess the possibility of closing the case with a family law order. DCFS made referrals to Mother including individual counseling and parenting classes along with drug/alcohol testing.

In an interview with DCFS on December 1, 2023, Mother denied the petition's allegations and denied being drunk on November 3. She now claimed S.L. was supposed to pick her up so they could go out together, but he did not show up or respond to phone messages. Concerned about his well-being, she and F.V. took a taxi to S.L.'s home. Once there, she told F.V. to wait in the car with the driver. Mother claimed S.L. assaulted her, and she defended herself by hitting him. Mother denied fleeing the scene after S.L. said he was calling the police and asserted the police arrived as she was retrieving F.V. from the taxi.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

In the same interview, Mother denied any violence in her relationship with S.L. other than the November 3 incident. She was then confronted with documentation regarding the August 28, 2023 incident and responded, "Oh yes." She asserted S.L. was the aggressor in that prior incident, the altercation occurred at her front door, and that F.V. was asleep during it and did not see anything.

DCFS spoke to several relatives of Mother and Father and to F.V.'s babysitter, all of whom denied any concerns about Mother's alcohol consumption or domestic violence. The manager of Mother's apartment complex denied knowing of any incidents at her residence requiring a police response. DCFS also spoke to F.V.'s teacher and school counselor, who expressed no concerns about abuse or neglect. However, the teacher and counselor both stated F.V. had begun behaving aggressively towards other students, including hitting them.

S.L. told DCFS that Mother smelled of alcohol during the November 3, 2023 incident, but it was unlike Mother to drink and he did not believe she had a larger issue with alcohol. S.L. said he initially did not see F.V. with Mother outside his house. S.L. asserted Mother refused to leave when he asked her to do so. She then punched him and hit his head several times with her phone. S.L. denied fighting back. He denied any prior domestic violence between himself and Mother, and said she was a good mom.

Mother failed to appear for scheduled drug/alcohol tests on December 7 and 12, 2023. She told DCFS she had made an appointment for parenting classes but was unable to recall any contact information for the purported provider. The record does not appear to reflect any meaningful effort by Mother to engage in individual counseling.

6

## D.    Adjudication and Disposition

The adjudication hearing took place on January 3, 2024. Father, who was non-offending, submitted to jurisdiction. F.V.'s counsel argued the court should sustain the petition; Mother argued for dismissal of the count pled against her. The court sustained the count alleged against Mother, stating that because of her inconsistent explanations about what happened on November 3 it did "not find [her] testimony to be credible" that she did not endanger F.V.

With regard to disposition, counsel for Father, F.V., and DCFS all requested the court remove the child from Mother's custody and terminate jurisdiction with a custody order granting joint legal custody, Father physical custody, and Mother monitored visitation. Minor's counsel noted that Mother's conduct had "traumatized" F.V., who was "in fear," "seem[ed] to be scared to go to" Mother, and wanted to remain with Father. Mother argued for a home-of-parent-mother order, a stay-away order involving S.L., and continued court jurisdiction with family preservation services.

The court removed the child, finding clear and convincing evidence of substantial danger and risk of detriment if F.V. was to remain in Mother's care. It further found DCFS had made reasonable efforts to prevent removal and there were no reasonable services as an alternative to removal. F.V. was declared a dependent and placed home-of-parent-father. The court then terminated jurisdiction with a custody order granting joint legal custody and physical custody to Father. The court ordered monitored visitation for Mother for a minimum of six hours a week; S.L. was not to be present at those visits. The court explained it ordered monitored visits because Mother had

not completed nor made substantial progress in individual counseling (including related programs for anger management and domestic violence if recommended by her therapist), parenting education, and random and on-demand weekly drug/alcohol testing. The court concluded by stating, "I do hope the mother does participate in programs so that she can go back to the family law court to get a more normalized relationship with her child."

## DISCUSSION

### A.   The Juvenile Court Did Not Err in Asserting Jurisdiction

#### 1.    *Relevant Law and Standard of Review*

For the juvenile court to assert jurisdiction in this case under section 300, subdivision (b)(1), a preponderance of the evidence must have shown that F.V. was at substantial risk of suffering serious physical harm due to Mother's failure or inability to adequately protect the child. Domestic violence can constitute such neglect because of "the substantial risk [to the child] of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.)

Section 300, subdivision (b)(1) requires that "a significant risk to the child must exist ' "at the time of the jurisdiction hearing." ' [Citations.]" (*In re J.N.* (2021) 62 Cal.App.5th 767, 775.) Previous acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur. (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.) Evidence of past conduct, however, can show a current risk of harm if there is a reason to believe the

conduct will reoccur.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394.)  " 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'  [Citation.]"  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

We review jurisdictional findings for substantial evidence in light of the entire record.  (*In re I.C.* (2018) 4 Cal.5th 869, 892.)  Our task is to merely determine if sufficient facts in the record support the juvenile court's findings.  (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)  " 'To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value.'  [Citations.]"  (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 602.)  "We do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts."  (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)  "[W]e draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion."  (*Ibid.*)

2. *Substantial Evidence Supports the Assertion of Jurisdiction*

The record here discloses substantial evidence supporting the juvenile court's assertion of jurisdiction.  Drawing inferences consistent with our standard of review, Mother was involved in two domestic violence incidents.  F.V. was present for both.  After the first, in which Mother was the victim, she did not cease contact with S.L., seek a restraining order, or take other steps to protect F.V. from the risk of harm.  Instead, about two months later, she drank to the point of intoxication and brought F.V. along to be present for a confrontation with S.L. that she

9

initiated and where she was the aggressor. F.V. was either alongside Mother during the violence or left alone with a stranger in a nearby taxi.[2] Mother then fled, leaving F.V. alone in the middle of the night with that stranger. After the incident, Mother gave inconsistent and false explanations about what occurred: denying any prior domestic violence until confronted with evidence showing she was untruthful, denying she previously had drunken to excess when F.V. had said this was not the first time Mother was drunk, denying that she went to S.L.'s house to feud with him, and falsely claiming that she only defended herself and did not abandon F.V. by running away to evade police. In addition to the substantial risk of serious physical harm to F.V. because of his proximity to the violence between Mother and S.L., and her abandonment of him when she fled, F.V.'s exposure to such violence had led to aggressive behavior (including hitting) against classmates.

Mother's arguments to the contrary disregard our standard of review. She contends the evidence shows domestic violence was unlikely to reoccur, she had no criminal record other than the November 3, 2023 arrest and no prior DCFS referrals, she was not intentionally deceitful when offering differing versions of what occurred and in any event the differences were "minor," and numerous witnesses expressed no concern about Mother's parenting. "When the parties present either contradictory evidence or evidence from which different inferences may be

---

[2] Mother claimed to know the taxi driver from previous rides. One may reasonably infer, however, that this was not true. Mother did not know the driver's name or other information about him, and admitted she made her taxi requests through a general taxi line without asking for a specific driver.

drawn, the substantial evidence standard of review requires the reviewing court to resolve all contradictions and draw all inferences in favor of the judgment or order being appealed." (*In re Alexandria P.* (2016) 1 Cal.App.5th 331, 338, fn. 4.) The juvenile court was entitled to conclude that Mother intentionally misrepresented what occurred on November 3, and the differences in her story were not inconsequential. Mother's failure to acknowledge and seek help to correct the substantial risk of serious harm to which she exposed F.V. by getting drunk, taking him in the middle of the night to perpetrate domestic violence, and then abandoning him by running away to avoid police showed the risk of harm was likely to continue, as "[o]ne cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.)

Mother also argues there was no substantial evidence that her drinking put F.V. at substantial risk of harm. The petition's allegations, which the court sustained, did not reference alcohol or assert that Mother's abuse of alcohol rendered her unable to protect the child. The evidence nevertheless showed that Mother's alcohol use impaired her judgment and helped lead to the November 3 incident. Although Mother highlights witness statements that denied her abuse of alcohol, there was substantial contrary evidence. Mother was intoxicated on November 3, F.V. indicated he had seen her drunk before, and we consider Mother's two missed tests to be positive for alcohol. (*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1343.) The juvenile court could reasonably infer that Mother had an untreated alcohol problem that impaired her judgment and

11

increased the risk of further domestic violence involving S.L., thus placing F.V. at continuing risk of harm.[3]

## B. The Juvenile Court Did Not Err in Ordering Removal

### 1. *Relevant Law and Standard of Review*

A juvenile court may not remove a child from their parent's care unless it finds by clear and convincing evidence that there is (1) "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor [or

---

[3] Mother's reliance on *In re Gilberto G.* (2024) 105 Cal.App.5th 52 to argue the court erred in asserting jurisdiction is unpersuasive. In that case, a mother drank too many beers and fell on the bus while taking her children to see their father. (*Id.* at p. 55.) Although the mother initially minimized what had occurred, the court found this isolated incident did not endanger her children, who were thriving and healthy, particularly in light of the mother's subsequent cooperation with DCFS which included drug and alcohol testing. (*Id.* at pp. 64-66.) Here, there was not one isolated episode of drinking but two episodes of domestic violence along with evidence concerning alcohol use leading to one of those incidents. Unlike the bus incident in *Gilberto G.* that did not endanger the minors, the November 3, 2023 incident involved Mother hitting her ex-boyfriend when F.V. was nearby and then running away and leaving F.V. behind with a stranger; F.V. was traumatized by the incident and had begun hitting classmates at school. Unlike the parent in *Gilberto G.*, who minimized her responsibility only initially, Mother demonstrated an increasing resistance to accepting responsibility over time—a factor the *Gilberto G.* court noted demonstrates a current risk of harm. (*Id.* at p. 66.) And, finally, unlike the parent in *Gilberto G.*, Mother did not cooperate with DCFS. She failed to test and failed to engage with services.

would be] if the minor returned home," and (2) "there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's [or] guardian's . . . physical custody." (§ 361, subd. (c)(1).) A finding of domestic violence "cannot alone provide the clear and convincing evidence necessary to justify removing a child. [Citations.] Rather, the juvenile court must determine whether a child will be in substantial danger if permitted to remain in the parent's physical custody, considering not only the parent's past conduct, but also current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.)

When reviewing " 'a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.' [Citations.] ' " 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" [Citation.]' [Citation.]" (*In re I.R.*, *supra*, 61 Cal.App.5th at pp. 520-521.)

2. *Substantial Evidence Supported the Removal Order*

When ordering removal, the court stated that it found "by clear and convincing evidence remaining in the home of . . . [M]other would pose substantial danger and risk of detriment to [F.V.]'s physical health, safety, protection, or physical or emotional well-being. [DCFS] has provided reasonable services to prevent removal, and no available services exist to prevent further detention. . . . For all of the reasons set forth by [DCFS's] counsel and minor's counsel, care, custody and control [are] taken from the mother. The child is placed home of [F]ather . . . ."

13

Mother initially argues this order failed to comply with section 361, subdivision (e), which requires that the juvenile court "state the facts on which the decision to remove the minor is based." This ignores that the court referenced and adopted the points made by DCFS and minor's counsel as its reasons for ordering removal. Minor's counsel succinctly stated those reasons before the court adopted them: (1) the evidence showed Mother's "protective capacity" and "ability to follow court orders" was "lacking"; (2) the evidence showed F.V. did not "seem to want to return to [Mother's] care" because of the trauma from the subject incidents; and (3) "this is a mother who does not acknowledge the issues" and "who has not participated in any program or service, including drug testing," such that "it's really hard to see how [the court] can conclude that" she "will abide by court orders to keep this child safe."

The same evidence supporting the jurisdictional findings, including Mother's failure to acknowledge the substantial risk of harm to which she exposed F.V. along with her failure to take advantage of services designed to prevent the reoccurrence of such risk, supports the findings regarding removal including that no reasonable means to protect F.V. were available short of removal. For these reasons, this case is unlike *In re I.R.*, *supra*, 61 Cal.App.5th 510. In that case, this court held removal was improper where there was no substantial evidence that domestic violence would continue because the parents had separated. (*Id.* at p. 521.) Here, Mother had already broken up with S.L. before the November 3, 2023 incident but nevertheless dragged F.V. along with her in the middle of the night to track S.L. down, confront him, and ultimately assault him. Given Mother's later dissembling about what occurred, including about her

14

abandonment of F.V. with a stranger during the incident, and her failure to engage in any services to address issues that led to the November 3 incident, the court was entitled to discount Mother's assertion that such an event would not happen again and that means existed short of removal to ensure F.V.'s safety.

## C.     The Custody Order Was Not an Abuse of Discretion

### 1.     *Applicable Law and Standard of Review*

Section 362.4 permits a juvenile court to issue custody and visitation orders when terminating jurisdiction.  (*Id.*, subd. (a).) "When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child."  (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)  "[T]he court is not restrained by 'any preferences or presumptions.'  [Citation.]  Thus, for example, a finding that neither parent poses any danger to the child does not mean that both are equally entitled to half custody, since joint physical custody may not be in the child's best interests for a variety of reasons."  (*Ibid.*)

Custody determinations are "committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established."  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)  An abuse of discretion requires that " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' "  (*Ibid.*)

### 2.     *Analysis*

DCFS argues that Mother failed to object below to the custody order and, thus, has waived her right to challenge it. Mother asserts the court did not afford her counsel the

15

opportunity to argue about the terms of the custody order and did not state its reasoning for restricting her visitation. None of these assertions is correct.

Mother and her counsel had ample opportunity to argue over F.V.'s custody, and contrary to DCFS's contention Mother did in fact dispute entry of the custody order before the juvenile court. The court began the hearing by noting that DCFS "is recommending . . . closing the case with a custody order, with the parents having joint legal custody, the father physical custody, and the mother monitored visits." Later, the court noted Father's counsel had filed a proposed custody order incorporating that recommended outcome and gave Mother's counsel a chance to be heard. Her counsel argued against that outcome, requesting Mother have custody and the court continue to assert jurisdiction to provide family preservation services. After the court made the custody order, it asked Mother's counsel if he had "anything else" to say, and counsel responded, "No."

The court also set forth its reasons for ordering supervised visitation. The court stated (and the custody order reflects) that supervised visitation was ordered because Mother had not made substantial progress in court-ordered programs including parenting classes, individual counseling (along with domestic violence treatment for offenders and anger management if recommended by her therapist), and weekly drug testing. These, collectively, are legitimate (and certainly not arbitrary) reasons for supervised visitation.

Mother otherwise fails to demonstrate that the court's determination to grant Father custody of F.V. and Mother supervised visitation was an abuse of discretion. The record undoubtedly contains evidence that Mother could be, and quite

often was, a responsible and loving parent.  But it also contained contrary evidence that raised serious questions about her judgment and actions as they impacted F.V., and that indisputably demonstrated Mother failed to comply with services to address the issues that led to dependency court involvement. It was for the juvenile court to weigh this evidence, and " ' "the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citations.]"  (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 319.)

## DISPOSITION

The juvenile court's order asserting jurisdiction, removing F.V. from Mother's care, and determining custody of F.V. is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

BENDIX, Acting P. J.

M. KIM, J.

17